## Commonwealth v. Berroni.

*William R. Stuckert*, for Commonwealth; *John L. Du Bois*, for defendant.

BOYER, J., Sept. 2, 1930—This was a prosecution in a summary proceeding brought against the defendant for the violation of an ordinance of the Borough of Newtown, prohibiting the driver of any automobile from entering into an intersecting street at which there was a "stop sign" placed by the borough authorities without first stopping the car. The defendant waived a hearing before the justice of the peace and gave bail for court under the provisions of section 1212 of the Vehicle Code of May 1, 1929, P. L. 905.

The borough authorities had placed a stop sign in the bed of the street on the center line of Washington Street near its intersection with State Street. The stop sign was a metal device with an oblique face placed towards the traffic approaching the intersecting street. The device was painted red, with white letters "Stop" four and one-half inches in height. The highest point of the device was seven inches above the ground and contained at the top a red light. Any person knowing that the signal was in the street and whose view was unobstructed might see the signal at a distance of 100 feet.

From the testimony there is no serious question but what the defendant knew that the signal was there and intentionally drove past it into the intersecting street without first stopping. In fact, he probably drove past it in order to make a test of the legality of the signal.

The fact that this defendant had knowledge of the presence of the sign and its meaning and that it was placed there by the borough council under provisions of an ordinance has no bearing on the case. A law, in order to be effective, must be uniform as to all persons. An ordinance cannot be held to be effective as to those who have personal knowledge of its provisions and not effective as to those who may be in ignorance of it. If this sign was not a legal sign under the provisions of the Vehicle Code of 1929, then the defendant was not bound to obey the ordinance, even though he had knowledge of it and had been warned by the officer not to ignore it.

In the opinion of the court, this case is controlled by section 1106 of the Vehicle Code of 1929, P. L. 905, 989. This section provides in part: "Local parking and other local ordinances, rules and regulations shall not be enforceable against an alleged violator, if, at the time and place of the alleged violation, an appropriate sign, giving notice thereof, is not posted conspicuously by the municipalities making the same, at points where any highway affected thereby joins other highways." It will be noticed that there are three main requirements as to these signs; first, that they must be "appropriate;" second, that they must give "notice thereof;" that is, notice of the ordinance, rule or regulation; and third, that the sign must be "posted conspicuously" at junctions of roads.

The sign in question may be said to have complied with the first provision, in that it was "appropriate" to the desired conduct of motorists, namely, to have all vehicles stop before entering upon the intersecting street. However, it did not comply with the other two requirements, particularly in that it did not give notice of the local ordinance or regulation. There is nothing in the sole word "Stop" to indicate to a stranger that the borough authorities have adopted an ordinance requiring all persons to stop before entering the intersecting street. The word "Stop" is frequently posted at curves and other dangerous places merely as a warning of the danger. It might be possible that the signal in question might have been placed in the street by an automobile club or other local organization or individual with the mere consent of the borough, or it might have been placed there by the police with or without express consent of the borough. In the opinion of the court, the sign placed

under this ordinance should have contained some words, such as "by order of Borough Council" or "by ordinance" or something similar. There is also some question in the court's mind whether the word "stop," without adding "before entering," is a sufficient notice, in view of the fact that the word "stop" is so frequently used merely to indicate danger.

Neither did this sign comply with the third requirement, in that it was not "posted conspicuously." For the purpose of giving notice of an ordinance providing penalties for its violation, a sign set in the bed of the street, with letters only four and one-half inches high, cannot be said to have been "posted conspicuously." Ordinarily, a motorist on approaching a corner does not search the ground for signs, but usually looks ahead and to the right for signs, notices, direction boards, pedestrians and vehicles. Usage has designated the usual place for traffic notices on the driver's right-hand side of the road well above the ground, somewhere near the level of the driver's eye and line of vision. The sign in question could easily be hidden from the vision of a driver who was in a line of cars, some of the cars ahead being further to the left and close to the sign. In the opinion of the court, this sign, if approved, would in effect be little more than a trap to catch unsuspecting motorists who were strangers in that locality. Of course, such was not the intention of the borough authorities in this case.

Under these findings and this view of the law, the court finds that the sign posted at the intersection of Washington and State Streets, in the Borough of Newtown, which sign the defendant ignored, was not a legal sign as required by the provisions of section 1106 of the Vehicle Code of 1929, and, therefore, the defendant was not guilty of violating the borough ordinance and must be discharged.

Now, Sept. 2, 1929, the defendant is discharged and the costs directed to be paid by the county.

From Isaac J. Vanartsdalen, Doylestown, Pa.